FILED
3/12/2024　LM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JUDGE BLAKEY
MAGISTRATE JUDGE KIM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GARRY EUBANKS,<br>      a/k/a "Noah Tyree" | No. **1:24-CR-00136**<br><br>Violation: Title 18, United States Code, Section 1343 |

### COUNT ONE

The SPECIAL NOVEMBER 2022 GRAND JURY charges:

1. At times material to this indictment:

**Individuals and Entities Involved**

a. The U.S. Railroad Retirement Board ("RRB") was an independent agency of the Executive Branch of the United States headquartered in Chicago. The RRB's primary function was to administer comprehensive retirement, disability, survivor, and unemployment/sickness benefit programs for the nation's railroad workers and their eligible family members under the Railroad Retirement Act ("RRA"), Title 45 United States Code, Sections 231, *et. seq.*, and Railroad Unemployment Insurance Acts ("RUIA"), Title 45 United States Code, Chapter 11. The RRA replaced the Social Security Act for rail employers and employees.

b. The RRB administered disability benefits to railroad employees who were totally and permanently disabled and unable to work in any kind of regular job.

c.  In order for a railroad employee to apply for disability benefits, he or she had to complete, among other things, RRB Form AA-1d (Application for Determination of Employee's Disability) and RRB Form AA-1 (Application for Employee Annuity). Both the RRB Forms AA-1d and AA-1 required the applicant to complete certifications. In certain cases, railroad employees completed RRB Form AA-4 (Self-Employment and Substantial Service Questionnaire).

d.  On RRB Form AA-1d, applicants had to describe in detail the limitations resulting from their impairment and state when they could no longer work because of their conditions. The signature page of the RRB Form AA-1d reminded an applicant that he or she had to answer these questions truthfully and provided:

> I agree to immediately notify the RRB if I work for any employer, railroad or non-railroad, or perform any self-employment work; if my condition improves . . . .
>
> I know that if I make a false or fraudulent statement in order to receive benefits from the RRB or if I fail to disclose earnings or report employment of any kind to the RRB, I am committing a crime, which is punishable under Federal law.

e.  RRB Forms AA-1d and AA-1 also included certifications that the applicant has received the RRB Booklet Forms RB-1d (Employee Disability Benefits) and RB-9 (Employee and Spouse Annuities, Events That Must Be Reported), which contained, among other things, requirements to notify the RRB if the applicant's condition improved or if the applicant performed any work, including through self-employment, regardless of how much the applicant earned. In pertinent part, the Booklet provided:

2

"Total and permanent disability" means one is "unable to work in any kind of regular job" and "permanently disabled" for any kinds of "regular work."

"Regular work" is the performance of the full range of material and substantial duties of any regular and gainful employment with any employer. Substantial duties are those that involve significant mental or physical activity even if they are only done part time. Gainful employment is work that is done for pay or profit, or is the kind that is usually done for pay or profit even if no profit is realized.

**In any case, all work and earnings by a disability annuitant must be reported promptly to the RRB in order to avoid potential overpayments and penalties.** (emphasis in original).

"Disability ends if" you medically recover so that you are able to work, or if you return to work and hold a job whether or not there has been any substantial improvement in your condition."

If in doubt, report.

  f. The RRB's Disability Benefits Division (the "DBD"), located in Chicago, Illinois, reviewed applications for occupational disability and total and permanent disability, which were submitted by railroad employees. Once an application was approved, the RRB in Chicago caused benefits payments to be issued by the United States Treasury to a bank account as designated by the applicant.

  g. From in or around 2002 to on or about May 24, 2012, defendant GARRY EUBANKS was a conductor for the Dakota, Minnesota & Eastern Railroad Corporation.

  h. On or about March 7, 2014, EUBANKS submitted an application for total and permanent disability benefits. EUBANKS signed the certifications accompanying RRB Forms AA-1d and AA-1. The DBD granted EUBANKS's

3

application on or about March 6, 2015 and began causing disability payments to be wired to EUBANKS.

      i.      On or about May 28, 2015, the RRB in Chicago sent EUBANKS a Form RL-210 notifying him that, in addition to his total and permanent disability benefits, he was also approved for a period of disability known as a "disability freeze," which allowed EUBANKS to receive Medicare benefits under the Social Security Act prior to reaching full retirement age. The notice informed EUBANKS, "Notify the Railroad Retirement Board (RRB) promptly if your condition improves; if you are working for pay or you are self-employed, regardless of the amount of earnings . . . Your case may be periodically reviewed to determine whether your condition remains severe enough to prevent any work activity to allow your disability freeze to continue."

      j.      Every year, beginning in or around 2015, the RRB in Chicago sent EUBANKS an RL-4 (Yearly Reminder Letter), which explained his responsibility to report work earnings and events that may affect his right to disability payments and listed events that must be reported immediately to the RRB, including impairment improvement, return to work, performing work, whether for pay or not, including through self-employment, or receipt of anything of value in lieu or salary or wages for any work.

      k.      Beginning no later than in or around November 2017 and continuing to at least in or around January 2023, EUBANKS operated and managed

"Semper Fidelis Kennels," a dog grooming, breeding, and training service in and around Denver, Colorado.

1. In or around May 2019, Semper Fidelis Kennels LLC was registered with the Colorado Secretary of State, with EUBANKS listed as the registered agent and with EUBANKS listed as the person who caused the registration to be filed. In or around March 2020 and June 2021, additional reports were filed with the Colorado Secretary of States confirming that EUBANKS was the sole registered agent of Semper Fidelis Kennels LLC.

**The Scheme to Defraud**

2. Beginning no later than in or around November 2017, and continuing through in or around January 2024, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> GARRY EUBANKS,
> a/k/a "Noah Tyree,"

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud the RRB and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, as further described below.

3. It was part of the scheme that, in order to receive disability benefits payments to which he was not entitled, EUBANKS made multiple false representations to the RRB and concealed material facts from the RRB concerning his operation and management of Semper Fidelis Kennels and his receipt of income or payments derived from the operation of the Semper Fidelis Kennels.

4. It was further part of the scheme that, on or about December 23, 2019, EUBANKS called the RRB and falsely represented that he had not worked since 2012. In truth, Eubanks had operated and managed Semper Fidelis Kennels beginning no later than November 2017 and continuing through in or around the time that he placed the call to RRB in December 2019.

5. It was further part of the scheme that, on or about February 11, 2020, EUBANKS called the RRB and falsely represented that he was not working. In truth, Eubanks had operated and managed Semper Fidelis Kennels beginning no later than December 2017 and continuing through in or around the time that he placed the call in February 2020.

6. On or about February 14, 2020, EUBANKS submitted a false statement to the RRB, which falsely indicated that his reported income from his business was a reimbursement from a hobby and that he did not earn a "consistent source of revenue." In truth, EUBANKS had earnings from his operation and management of Semper Fidelis Kennels from in or around November 2017 and continuing through in or around February 2020.

7. It was further part of the scheme that, on or about February 16, 2021, EUBANKS submitted a letter to the IRS, in which EUBANKS claimed that his son was the owner of Semper Fidelis Kennels, in order to conceal his connection to Semper Fidelis Kennels from the RRB.

8. It was further part of the scheme that, on or about March 31, 2022, EUBANKS submitted a RRB Form G-254 to the RRB, which falsely represented that

he had not worked for an employer and had not been self-employed since January 1, 2014. In truth, EUBANKS had operated and managed Semper Fidelis Kennels beginning no later than in or around November 2017 and continuing through the time that he submitted the RRB Form G-254 in or around March 2022.

9. It was further part of the scheme that, on or about April 4, 2022, EUBANKS submitted a RRB Form G-252 to the RRB, which falsely represented that he did not receive any income, payments, or reimbursement from Semper Fidelis Kennels and did not make any management decisions. In truth, EUBANKS managed and operated Semper Fidelis Kennels and earned income or payments from the business at the time he submitted the RRB Form G-252 in or around April 2022.

10. It was further part of the scheme that, on or about April 4, 2022, EUBANKS submitted a RRB Form G-252 to the RRB, which falsely represented that the Semper Fidelis Kennel business belonged to his son, in order to conceal his ownership and management of Semper Fidelis Kennels from the RRB.

11. It was further part of the scheme that, between in or around 2017 and through in and around 2023, EUBANKS failed to respond to the RRB's annual Form RL-4 (Disability Reminder Notice) and did not notify the RRB that he was worked at, managed, or operated Semper Fidelis Kennels.

12. It was further part of the scheme that, between in or around December 2017 and in or around January 2024, EUBANKS caused the RRB in Chicago to cause the U.S. Treasury to wire to a bank account at USAA Federal Savings Bank controlled

7

by EUBANKS disability benefits totaling approximately $188,375 to which he was not entitled.

13. It was further part of the scheme that EUBANBKS concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme, the purposes of the scheme, and the acts done in furtherance of the scheme.

14. On or about January 2, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> GARRY EUBANKS,
> a/k/a "Noah Tyree,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce by means of a wire communication from the Railroad Retirement Board in Chicago, Illinois, to the United States Treasury in Kansas City, Missouri, certain writings, signs, and signals, namely, a wire transfer of disability benefits in the amount of $2,271.10;

In violation of Title 18, United States Code, 1343.

## COUNT TWO

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2. On or about January 4, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARRY EUBANKS,
a/k/a "Noah Tyree,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce by means of a wire communication from the Railroad Retirement Board in Chicago, Illinois, to the United States Treasury in Kansas City, Missouri, certain writings, signs, and signals, namely, a wire transfer of disability benefits in the amount of $2,365.93;

In violation of Title 18, United States Code, Section 1343.

## **COUNT THREE**

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2. On or about January 3, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARRY EUBANKS,
a/k/a "Noah Tyree,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce by means of a wire communication from the Railroad Retirement Board in Chicago, Illinois, to the United States Treasury in Kansas City, Missouri, certain writings, signs, and signals, namely, a wire transfer of disability benefits in the amount of $2,475.88;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2. On or about January 3, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

GARRY EUBANKS,
a/k/a "Noah Tyree,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce by means of a wire communication from the Railroad Retirement Board in Chicago, Illinois, to the United States Treasury in Kansas City, Missouri, certain writings, signs, and signals, namely, a wire transfer of disability benefits in the amount of $2,684.18;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL NOVEMBER 2022 GRAND JURY alleges:

1. The allegations contained in Counts One through Four of this indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of his violation of Title 18, United States Code, Section 1343 as set forth in the foregoing indictment,

> GARRY EUBANKS,
> a/k/a "Noah Tyree,"

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3. The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include, but are not limited to, approximately $188,375.

4. If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence; has been transferred of sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture or substitute property, as

provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

Signed by Sarah Streicker on behalf of the
ACTING UNITED STATES ATTORNEY